**172 So. 763**

**CONNELL v. MUSLOW OIL CO., Inc., et al.**

**No. 34093.**

Jan. 4, 1937.

Rehearing Denied Feb. 1, 1937.

Cook, Cook & Egan, of Shreveport, for appellant.

Foster, Hall, Barret & Smith and Herold, Cousin & Herold, all of Shreveport, for appellees.

O'NIELL, Chief Justice.

The plaintiff is claiming, by the prescription of ten years, acquirendi causa, the mineral rights in 40 acres of land, which he owns. The land is described as the N. W. ¼ of S. E. ¼ of Sec. 10, in T. 20 N., R. 15 W., in Caddo parish. The defendant Muslow Oil Company is the successor in title of the Natalie Oil Company for the mineral rights in the 80 acres, described as the W. ½ of S. E. ¼ of the section, including a producing oil well on the southern 40 acres, or S. W. ¼ of S. E. ¼ of the section. The well is near the southwest corner of the 40 acres.

The judge of the district court rejected the plaintiff's demand. He has appealed from the decision.

In January, 1914, the Natalie Oil Company, being the owner of the 80 acres of

land, and of the mineral rights therein, including the producing oil well which the company had drilled two years before, sold the 80 acres of land to a corporation styled Willer, Marks & Gamm, but reserved from the sale all of the mineral rights in the land, and the producing oil well, with all of the machinery and equipment belonging thereto. The reservation was stipulated in detail in the act of sale, which was recorded promptly. The oil well has been in operation as a producing well, by the lessees of the Natalie Oil Company and of its successors in title, continuously, ever since the well was brought in, in 1912, except for about 18 months in 1925 and 1926; and the royalties have been paid regularly to the Natalie Oil Company and its successors in title.

In February, 1916, Willer, Marks & Gamm sold to Sam Willer and Julius Gamm the north half of the 80 acres of land, that is, the N. W. ¼ of S. E. ¼ of the section, without mentioning in the deed that the mineral rights in the land had been reserved by the Natalie Oil Company, or were not sold to Willer and Gamm.

In February, 1917, Sam Willer and Julius Gamm sold the same 40 acres, that is, the N. W. ¼ of S. E. ¼ of the section, to W. E. McDade, without any reservation or mention of the mineral rights.

In January, 1919, W. E. McDade sold the same 40 acres, that is, the N. W. ¼ of S. E. ¼ of the section, to E. A. Connell, without any reservation or mention of the mineral rights in the land. Connell is the plaintiff in this suit. His deed for the 40

acres of land, and the deeds of his predecessors in title, were recorded promptly.

The deed by which McDade sold to Connell was for a tract containing 129 acres, which included 89 acres in cultivation, adjoining on the north and east the N. W. ¼ of S. E. ¼ of Sec. 10. The latter 40 acres was, for the most part, wood land; but, in cultivating the land on the north and east of this 40-acre tract, Connell cultivated also a small part of the 40 acres on the north and east side. The judge of the district court found that Connell had had actual possession of the surface of the N. W. ¼ of S. E. ¼ of Sec. 10 for a period exceeding ten years preceding the filing of this suit. We shall accept that finding as correct, in our consideration of the case. The judge based his decision upon the fact that the Natalie Oil Company and its successors in title had retained possession, continuously (except for the period of 18 months in 1925 and 1926), of the servitude which was created by the sale made by the Natalie Oil Company to Willer, Marks & Gamm, with reservation of the mineral rights, in January, 1914.

No well was drilled on the N. W. ¼ of S. E. ¼ of Sec. 10 during the period exceeding seventeen years after Connell bought the land. The Natalie Oil Company and its successors in title, however, have retained possession of the mineral rights, or servitude, on the whole 80 acres of land, in the only way that the law provides for the exercise of the right of possession of a servitude, or an incorporeal right. Article 3432 of the Civil Code provides:

"The possession of incorporeal rights, such as servitudes and other rights of that nature, is only a quasi possession, and is exercised by the species of possession of which these rights are susceptible."

It is conceded that the suspending of the operation of the oil well for the period of only eighteen months—or for any period less than ten years—was not enough to cause the Natalie Oil Company or its successors in title to lose their servitude by the liberative prescription of ten years, for nonuse. It is not disputed that the exercise of the servitude, by the operating of the oil well, was open and notorious, and apparent to every one in the neighborhood. There was the derrick, the pumping rig, oil tanks, and other apparatus, and trucks hauling materials to the well; all of which was obvious to every one in the vicinity, and the passersby. W. E. McDade, testifying as a witness in the case, admitted that he knew that the mineral rights were claimed by some one else when he bought the 40 acres from Sam Willer and Julius Gamm. McDade admitted that Gamm told him, at the time of the sale, that some one else claimed the mineral rights in the land; and McDade admitted that, when he sold the 40 acres to Connell, he told Connell that he, McDade, did not know whether he owned the mineral rights, and that he told Connell that he was transferring only such rights as he had. It is not likely that Connell believed that he was acquiring the mineral rights when he bought the 40 acres of land from McDade, because the deed in which the Natalie Oil Company had reserved the mineral rights on the whole 80 acres was then only

five years old. Whether Connell did or did not actually know that the Natalie Oil Company owned the mineral rights in the 80 acres of land, at the time when Connell bought the northern 40 acres from McDade, is a matter of no importance, in our view of the case. The important fact is that the Natalie Oil Company and its successors in title, by exercising their mineral rights, or servitude, upon a part of the 80 acres of land, protected the servitude on the whole 80 acres against loss by prescription.

The plaintiff's suit seems to be founded upon the idea that, when Willer, Marks & Gamm sold to Willer and Gamm the northern half of the 80 acres of land, they thereby divided the servitude on the whole 80 acres into two servitudes, one on each 40 acres of land; and that, thereafter, it was necessary for the Natalie Oil Company or its successor in title to exercise its right by drilling a well on the northern 40 acres, in order to protect the servitude on that tract, as well as on the southern 40 acres, against loss by prescription. That would mean that the owner of a tract of land in which some one else owns the mineral rights may compel the owner of the mineral rights to drill a well on each and every part of the land that the owner of the land sells, in order to prevent the loss of the servitude on the land sold, by the prescription of ten years acquirendi causa. That proposition is obviously untenable, because it would give to the owner of the servient estate the right to lessen the value of the servitude, or to make it less burdensome to the servient estate, without the consent of the owner of the servitude.

The plaintiff in this case cites and relies upon the ruling in Palmer Corporation of Louisiana v. Moore, 171 La. 774, 132 So. 229, and Sample v. Whitaker, 171 La. 949, 950, 132 So. 511, 514. But the difference between the cases cited and this case is that in the cases cited the owner of the mineral rights, or servitude, allowed ten years to elapse without drilling a well, or in any way exercising his right, on any part of the land subject to the servitude, a part of which land was bought in good faith and possessed for a period exceeding ten years by a third party. The ruling was that the third possessor had acquired, by the prescription of ten years acquirendi causa, the absolute ownership of the tract which he bought. The prescription of ten years liberandi causa (under article 789 of the Civil Code) would have released the whole tract from the servitude, and hence there would have been no necessity for considering the prescription of ten years acquirendi causa, as to the tract which was bought by the third party, but for the fact that the prescription of ten years liberandi causa was suspended by the minority of one of the co-owners of the servitude, or mineral rights. According to article 3478 of the Civil Code, as amended by Act No. 64 of 1924, p. 91, the prescription of ten years acquirendi causa runs against minors. Hence, in Sample v. Whitaker, the court, after referring to the fact that article 706 of the Civil Code of France required 30 years of nonuse to release a servitude by prescription, said:

"If the Civil Code of Louisiana declared that it required thirty years of nonuse, or any other period exceeding ten years, to extinguish a discontinuous servitude, it would be illogical to hold that such a servitude could be extinguished by the prescription of ten years. But, when there has been a nonuse of the discontinuous servitude for the time necessary to extinguish it by the prescription liberandi causa, there is no reason why it should not be extinguished by confusion, so to speak, by the holder of an apparently valid title for the whole property, in good faith, remaining in undisturbed possession of the land for ten years—if, because of the minority of the owner of the servitude, the prescription liberandi causa has been suspended."

In the case of the Palmer Corporation of Louisiana v. Moore, Andreas Seubert sold three tracts of land to G. L. Carriere, reserving the mineral rights; and, nine months afterwards, Carriere sold to H. W. Moore the eastern 80 acres off of one of the tracts, called tract No. 3, and containing 280 acres. In the deed from Carriere to Moore there was no mention of the mineral rights, and in fact Moore bought the land without actual knowledge that he was not acquiring the mineral rights in the 80 acres of land, notwithstanding the deed from Seubert to Carriere was recorded promptly. After Moore had been in possession of his 80 acres of land, in good faith, cultivating it as a farm, for twelve years, the Palmer Corporation and the Gulf Refining Company, having obtained a lease from Seubert, undertook to drill a well on the 80 acres of land belonging to Moore, and brought suit to enjoin him from interfering with them. Moore pleaded the prescription of 10 years

acquirendi causa; and the plea was sustained. The prescription of ten years liberandi causa was unavailing because Andreas Seubert had transferred his mineral rights to John Seubert, who, after selling a third of the mineral rights to Louis Scharbau, died, leaving several children, one of whom was a minor; and the minority of this co-owner of the mineral rights, of course, suspended the prescription of ten years liberandi causa. The opinion which was rendered in the case shows plainly that Moore's plea of prescription of ten years acquirendi causa would have been unavailing if the owner of the mineral rights, or servitude, on the tract No. 3, containing 280 acres, of which the eastern 80 acres belonged to Moore, had exercised the right by drilling a well on any part of the 280 acres within the ten years. On that subject the court said:

"No previous attempt had been made to drill for oil or gas or other minerals on the 80 acres of land, or on the tract No. 3, which it formed part of, during the period exceeding twelve years during which the defendant, Moore, had been continuously in undisturbed possession of the 80 acres of land."

In Sample v. Whitaker, the defendant had remained in possession of the land continuously for twenty-four years, during which time no attempt was made by the claimants of the mineral rights to drill a well, or to exercise any right upon the land. The prescription of ten years liberandi causa was unavailing because Mrs. Sample had died, leaving her community interest in the mineral rights to her minor children; and their minority, of course, suspended

the prescription liberandi causa. But, if the Samples had possessed their servitude, by the exercise of it, as provided in article 3432 of the Civil Code, Whitaker's possession of the land would not have been an adverse possession, and the prescription of ten years acquirendi causa would have been unavailing.

The rule of law that controls this case is that the exercise of the mineral rights, or servitude, on any part of one continuous tract of land upon which the servitude is imposed is considered an exercise of the right on the whole tract. It is not so, of course, as to two or more separate tracts, because when the mineral rights are granted or reserved on two or more separate tracts, even though it be in one deed, there are as many servitudes as there are tracts of land. In the case of Lee v. Giauque, 154 La. 491, 97 So. 669, 670, the owner of the mineral rights on several separate tracts of land, two of which tracts had a common corner, drilled a well on one of the two tracts having the common corner, but not on any other tract, during a continuous period exceeding ten years; and, in deciding that the servitude was saved from prescription on the whole tract on which the well was drilled, but not on any other tract, the court said:

"We are of opinion that the exercise upon any part of a continuous tract of land of a servitude extending over the whole tract preserved the servitude over the whole for the reason that there is but one servitude on the whole tract.

"On the other hand, we think that servitudes extending over separate tracts of land

constitute distinct servitudes; and that the exercise of the right over one of these tracts will not serve to preserve the right over other and distinct tracts. For instance, the right of passage on lands to my right, and also on lands to my left, clearly constitute two distinct servitudes, although created by the same title; and by exercising my right only on one side I indicate no intention of preserving my right on the other.

"And to constitute a single tract of land the lands must be so situated that one may pass from one part to the other without passing over the lands of another. But, as it is impossible to pass through a mere point, it follows that one cannot pass from said section 31 to section 1 without passing over other lands. See Anvil Hydraulic & Drainage Co. v. Code, 182 F. 205, 206, 105 C.C.A. 45, and authorities there cited.

"We are therefore of opinion that defendant has preserved his rights as to section 31 but not as to the other lands in controversy."

In Patton et al. v. Frost Lumber Industries et al., 176 La. 916, 147 So. 33, 34, 35, each one of the two plaintiffs owned 40 acres, forming part of a continuous tract containing approximately 30,000 acres, on which the defendant owned the mineral rights. The plaintiffs claimed that the servitude on their two tracts, of 40 acres each, was extinguished by prescription because no well had been drilled on either of their 40-acre tracts during ten consecutive years. It was held that the drilling of wells on other parts of the continuous tract of 30,000 acres had interrupted the prescription on the parts of the land owned by the plaintiffs. In so deciding, the court said:

"The owners of this servitude did exercise it by drilling and producing gas within the ten-year period. While no well was ever drilled on the particular land owned by these plaintiffs, yet at least ten producing gas wells have been drilled on other portions of this large continuous tract, eight of which within ten years from the date on which the Federal Petroleum Company acquired its servitude on January 12, 1917. The nearest producing well to plaintiffs' property is approximately three miles. The others are from four to ten miles away. But, as we have stated, they are all on the same continuous tract of land on which plaintiffs' lands form a part.

"In Lee et al. v. Giauque, 154 La. 491, 97 So. 669, we held that the exercise of a servitude on any part of a continuous tract of land where the servitude covers the whole tract preserves the servitude on the entire tract; the reason being that there is but one servitude."

We concur in the opinion of the district court that the plaintiff in this case could not acquire the mineral rights on his 40 acres of land by the prescription of ten years acquirendi causa, and thereby extinguish the defendant's servitude to that extent, while the defendant and its predecessors in title were exercising the servitude on the 40 acres forming the other half of the tract which was subject to the servitude, and were thereby protecting the servi-

tude against loss by the prescription of ten years liberandi causa, on the whole 80 acres of land.

The judgment is affirmed.