' LOTTINGER, Judge.
The trial judge, in this matter, .in his written reasons for judgment, • carefully outlined the pleadings and facts as presented in the court [below. His reasons are as follows:
“This is a jactitation suit filed September 10, 1954, in which John Baker, one of the Plaintiffs, being the owner and in possession of approximately eight hundred 'and twenty-two (822) acres of land subject to a mineral reservation of one-half (V2) of the minerals in and under the land, and the owners of said mineral reservation, the other Plaintiffs, aver that the Defendant is slandering their title to the oil and gas rights and other mineral rights in the land. Plaintiff John Baker acquired the property from the other Plaintiffs December 17, 1951, spbject to a mineral reservation by these other Plaintiffs of one-half (%) of the oil, gas and other minerals in and under the land.
“All of the plaintiffs, except.John Baker, acquired the land without.any mineral reservations on September 17, 1951, from Walter E. Kellner, Liquidator of Glaser and Lewis, Inc., successors in title to the land to George D. Segrera, who acquired the land from the St. Martin Land Company on April 22, 1938. In the sale by St. Martin- Land Company to George D. Segrera dated April 22, 1938, the St. Martin Land Company reserved unto itself all of the oil, gas and other minerals in, under and to be produced frótn the land.
“The claim of the Defendant to the ¡mineral rights in said land arises from what purports to be a mineral deed executed by St. Martin Land Company to The Texas Company of Texas on March 29, 1919 (D-1), an agreement between the same parties dated November 26, 1929, supplementing said purported mineral deed (D-2), and transfer by The Texas Company of Texas to the Defendant The Texas Company of Delaware dated April 19, 1927 (D-3). All of these documents cover a large body of land estimated to contain approximately thirty-eight thousand (38,000) acres including the land involved in this suit.
“In their petition Plaintiffs pray that there be Judgment quieting them in their possession of the property in contest and ordering the- Defendant to disclaim any title whatsoever thereto or to assert any rights, title or claim to the property within sixty (60) days from the rendition of Judgment and in default of such suit being instituted within the time fixed that the Defendant be thereafter forever barred from setting up any claims, rights or privileges to or against' the property.
“To the suit Défendant filed an exception of lack of sufficient possession on the part- of Plaintiffs of the land and mineral rights thereto and failure of Plaintiffs to allége sufficient posses^ sion thereof to institute and prosecute the suit.
*265 “In its effort to show that Plaintiffs were not in possession of the mineral rights to the land and to establish such possession in itself, Defendant offered in evidence the documents above referred to by which it acquired mineral rights from the St. Martin Land Company to the land in controversy, other documents to prove that it had conducted drilling operations and actually produced oil and gas from lands other than that involved in this suit but included in the mineral servitude from the St. Martin Land Company. Defendant also offered the testimony of Mr. George Mott to prove that all of the land included in the mineral servitude from the St. Martin Land Company to The Texas Company of Texas is contiguous. All of which was an attempt on the part of the Defendant to show that the mineral servitude as to all of the land covered by the deed from the St. Martin Land Company to the Texas Company was still in full force and effect and that accordingly, Defendant and not Plaintiffs had possession of the mineral rights appertaining to the land in contest. All of this evidence was allowed over the objection of counsel for Plaintiff but subject to and burdened with the objection.
“After a careful consideration of the decisions of the Supreme Court of this State in the cases of International Paper Co. v. Louisiana Central Lumber Company [202 La. 621], 12 So.2d 659 and Ware v. Ba[u]cum [221 La. 259], 59 So.2d 182, I find it unnecessary to consider this evidence. According to the decision in the Ware v. Ba[u]cum case the Plaintiffs in the instant suit have made a prima facie showing that the adverse claim of the defendant for the mineral right to the land has been extinguished by the prescription of ten (10) years liberandi causa. The Defendant in this case is not, as in the case of International Paper Company v. Louisiana Central Company actually and adversely possessing the mineral rights to the land. In the International Paper Company case the Defendant had spent a very considerable amount of money, perhaps millions of dollars, drilling sixty-three (63) producing wells. These wells had actually been drilled on the land involved in the suit and not on adjoining lands as in the instant case.
“In the instant case it was conceded by the Defendant that the Plaintiff John Baker is in actual physical possession of the land in question and that no oil wells have been drilled on this land for a period in excess of ten years prior to the date of the filing of this suit.
“This being a jactitation suit the Court cannot go into the question of the title or ownership of the mineral rights appertaining to the land and cannot, therefore, decide whether the plea of prescription made by the Plaintiffs is or is not well founded. The Defendant may rebut the presumption of the loss of its servitude by proving that the accruing prescription was interrupted or suspended during the ten (10) year period. But the proof can be made only in the revindication action, if and when timely brought, inasmuch as Defendant’s title depends entirely on an interruption or suspension of prescription (the servitude appearing on its face to have prescribed) and no issue of title can be tried in a jactitation action.
“For these reasons let there be judgment in favor of Plaintiff and against the Defendant The Texas Company overruling the exception of lack of sufficient possession to institute and prosecute this action, quieting Plaintiff John Baker in a possession of the property described in Article 1 of Plaintiffs’ petition and ordering the Defendant to disclaim any title whatsoever to the said property or to assert any rights, title or claim to the said property within sixty (60) days from the rendition of this Judgment and in default thereof Defendant be forever barred from *266 setting up any claims, rights or privileges to the said property.”
A reading of the above will reveal that the Lower Court’s opinion was based largely, if not entirely, on the holding of the Supreme Court in the case of Ware v. Baucum, 221 La. 259, 59 So.2d 182. A study of the cited case convinces us that while undoubtedly the conclusion reached by the Court in said case is correct, its holding is not controlling in the case at bar. In the Ware suit, supra, the plaintiff landowners brought an action in jactitation against a mineral owner whose mineral interest was created by an instrutnent executed more than ten years previous to the filing of the suit. The plaintiffs alleged that they were the owners of and in actual possession of the land and that the defendants had slandered their title by recording an affidavit within ten years from the date of the creation of the mineral servitude whereby title to a one-half mineral interest in the land was asserted and by attempting to negotiate, an oil lease on the interest. The defendants filed an exception of no right and no cause of action, which was held as sufficient to raise the issue of possession. They also answered alleging that in 1945 and prior to the accrual of ten years prescription liberandi causa as to the mineral interest, the then surface owner of the land acknowledged the defendants’ ownership of the one-half mineral interest, and, that the plaintiffs could not maintain the jactitation suit because they did not have possession of the mineral interest. The Lower Court overruled the exception of no right or cause of action and held that as more than ten years had elapsed, the presumption was that the servitude was not in existence when the suit was filed and that the plaintiffs had, therefore, made out a prima facie case. A notarial act dated June 18, 1945, and pleaded by the defendants in their answer as having interrupted the running of prescription, was not considered because of the fact that to have done so would have raised the question of title, which is not pertinent in an action in jactitation. While, as stated before, we have no quarrel with the holding in the Ware case, we do not believe that same is controlling here for the obvious reason that in the Ware case, there was nothing to • show that the defendants were in possession of the mineral interest nor were they exercising possession of the minerals by drilling or otherwise at the time suit was filed. As a matter of fact the Ware case involved one tract of land which had never been drilled.
It is settled beyond all doubt that the only question raised by an action in jactitation is that of possession until the suit is converted into a petitory action. As was stated in the case of International Paper Co. v. Louisiana Central Lumber Co., 202 La. 621, 12 So.2d 659, 660 by the late Chief Justice O’Niell and reiterated in Lenard v. Shell Oil Co., 211 La. 265, 29 So.2d 844:
“It is well settled — and not disputed —that a jactitation suit, or an action for slander of title, can be maintained only by one who is in actual possession as owner, and only against one who is not in possession, of the property the title to which is sought to be quieted.” (Italics ours.)
In so far as the possession of such servi-tudes, such as mineral rights, our Supreme Court has definitely laid down the following rule in the same cases of International Paper Co. v. Louisiana Central Lumber Co. and Lenard v. Shell Oil Co. supra as follows:
“Mineral rights and mineral leases are by Act [No,] 205 of 1938 ‘defined and classified as real rights and incorporeal immovable property, and may he asserted, protected and defended in the same manner as may be the ownership or possession of other immovable property by the holder of such rights’. It is declared in article 3432 of the Civil Code that possession of incorporeal property; such as servitudes, is had by the exercise of such rights. See Connell v. Muslow Oil Co., 186 La. 491, 172 So. 763; Allison v. Maroun, 193 La. 286, 190 So. 408; and In re Mt. Forest Fur Farms of America, Inc., *267 122 F.2d 232, where the United States' Circuit Court of Appeals for the Sixth Circuit reviewed extensively the law of Louisiana recognizing that mineral rights are subject to actual possession, adverse to the possessor of the land itself, by the exercise of such rights.” (Italics ours.)
The Supreme Court of Louisiana in the case of Lenard v. Shell Oil Co. supra [211 La. 265, 29 So.2d 851] likewise laid down the following rule with reference to the possession of the mineral servitude and the possession of the land itself and we quote as follows:
“By the use of the word 'severed we did not intend to say that two estates of corporeal property had been created. A reading of the opinion in its entirety shows that what we intended to say, and did say, is that the error in the judgment appealed from is in the omission to observe that the act creating the mineral servitude made possible two possessions of the property, i. e., the possession of the mineral servitude and the possession of the land itself, and hence that the mineral servitude was subject to possession and was in fact possessed by the owner thereof adversely to the owner of the 30 acres of land.” (Italics ours.)
That being the law in Louisiana we are only called upon to resolve the issue raised by the defendants’ plea of want of sufficient possession. As shown in the trial judge’s reasons for judgment,, the defend-, ant offered in evidence the documents by which it had acquired its alleged mineral rights as well as documents to prove that it had conducted drilling operations and actually had produced oil and gas from lands other than those involved in the suit but contiguous to those lands and includ--ed in the original mineral servitude for the purpose of showing that plaintiffs were not in possession of the mineral rights to the land and to establish such possession in itself. This evidence was held improper <pn the ground that the plaintiffs had made a prima facie showing that defendants’ min-' eral rights had been extinguished by prescription and on the further ground that the defendant was not actually possessing the mineral rights in question. With this reasoning we cannot agree. It is well settled that drilling operations conducted on a part of a large contiguous area by the owner of'a mineral servitude protects their title.to the servitude on the whole tract and establishes the actual possession of said servitude on the whole tract. See Lenard v. Shell Oil Co., 211 La. 265, 29 So.2d 844, and cases therein cited. Unquestionably, in the instant case, the defendant had conducted operations on land contiguous to those involved here, and, this being the case, they were' necessarily in possession, not only of the minerals underlying the lands upon which the drilling was conducted, but also those contiguous tracts such as are herein involved. This being the case, the plaintiffs, as the owners of the fee title to the land itself, cannot be held to have that degree or type of possession required to maintain the action in jactitation and hence the exception of want of possession should have been maintained. See Lenard v. Shell Oil Co., supra, and International Paper Co. v. Louisiana Central Lumber Co., 202 La. 621, 12 So.2d 659.
For the! reasons assigned, the judgment appealed from is reversed and the exception of want .of. possession is maintained and plaintiffs’ suit dismissed at their costs.
Judgment reversed.