HAMITER, Justice.
 

 Contested in this jactitation action is a one-half mineral interest in and to approximately 1182 acres of land in Claiborne Parish. The mineral interest, known in our jurisprudence as a servitude on the land, is claimed by defendants under a certain instrument executed more than ten years prior to the institution of this suit on May 11, 1949.
 

 ■Concluding that plaintiffs held the required possession as owners, the district
 
 *264
 
 court maintained the action and ordered that defendants bring a suit within 60 days in revindication of their rights, or, in default thereof, that they be forever barred from setting up any claims, rights or privileges to the property. Defendants are appealing from the judgment. ■
 

 In their petition plaintiffs alleged that they are the owners and in the actual physical possession of the land; and that defendants have slandered their title by causing the recordation of an affidavit asserting a one-half mineral interest in the property and by attempting to negotiate an oil and gas lease on that interest. Plaintiffs prayed that defendants be ordered to disclaim any title whatsoever to the property or to assert herein any rights they may have thereto; and that after due proceedings there be judgment cancelling the inscription of the affidavit and declaring defendants to be without interest in the property.
 

 To the suit defendants tendered exceptions of no right and no cause of action. Thereafter, with full reservation of their rights under the exceptions, they answered, admitting that plaintiffs own and are in corporeal possession of the surface rights of the property but denying that the latter are in possession of the disputed one-half mineral interest. Further, defendants, in the answer, set out their claim to such mineral servitude (created by an instrument executed more than ten, years before the institution of this suit), they particularly averring that in a notarial act dated June 18, 1945 (within the ten year prescriptive period) the then sole owner of the surface rights acknowledged defendants’ ownership to a one-half mineral interest. Concluding, defendants alleged that plaintiffs cannot maintain this slander of title suit, not having possession of such mineral interest, and they prayed that the demands of plaintiffs be rejected.
 

 Plaintiffs, thereupon, obtained the issuance of a rule to show cause why judgment should not be rendered on the face of the pleadings. I'n their motion therefor they showed that the answer of defendants did not convert the suit into a petitory action, but placed at issue only the question of possession; and that, under Act 241 of 1946, LSA-RS 13:5063 et seq., the issue of possession must be raised by pleadings filed in limine litis.
 

 This rule, after a hearing, was recalled, the court holding that defendants’ exception of no right of action was sufficient to put at issue the question of plaintiffs’ possession.
 

 Plaintiffs then amended their petition by setting out in detail a claim to the ownership of all minerals in and under the land, and by pleading specially an extinguishment of defendants’ asserted mineral servitude by the prescription of ten years liberandi causa. .
 

 Thereafter, defendants’ exception of no right of action, levelled at plaintiffs’ al
 
 *266
 
 leged lack of possession of the contested mineral rights, came on for trial; and it was tried on stipulations of counsel and on documentary evidence. Among the stipulations was one to the effect that “there has been no exploration for oil, gas or other minerals, nor production of oil, gas or other minerals, on the land in controversy in this suit since November 21, 1936.” Following the trial, the exception of no right of action was overruled.
 

 This jactitation action was then submitted for decision on the evidence adduced during the trial of such exception; and the district court rendered the judgment, hereinabove first mentioned, from which the defendants are appealing.
 

 In view of the pleadings of the parties, certain statements of their counsel, and the judgment of the district court, we must treat this proceeding strictly and exclusively as an action in jactitation that has not been converted into a petitory action. Thus, as before shown, plaintiffs prayed that defendants be ordered to disclaim title or to assert their rights against the property; and defendants challenged plaintiffs’ possession of the mineral interest not only under their exception of no right of action but also in their answer in which they prayed merely that the demands of plaintiff be rejected. Confronted with similar pleadings in Rudd v. Land Company, Inc., 188 La. 490, 177 So. 583, 585, this court held the proceedings to be strictly jactitatory and, in so holding, observed:
 

 “The character of plaintiff’s action is fixed by the prayer of his petition. In like manner, the nature of the relief sought by defendant is determined by the prayer of its answer. Neither prayer is amplified by the allegations embodied in the pleadings. No issue of title is set up in the pleadings, and either party prays for judgment on the question of title. The prayer of the. petition is that defendant be ordered to disclaim any interest in the property described or to assert in this proceeding any claim of title it might have. The prayer of the answer is that plaintiff’s demands be rejected.
 

 ******
 

 “* * * The allegations and prayer of the petition and the allegations and prayer of the answer taken together stamp the proceeding as a jactitation suit and not as a petitory action.”
 

 Again, in plaintiffs’ motion for the rule for judgment on the face, of the pleadings it is said that defendants’ answer has not converted the jactitation suit into a petitory action. Too, the judgment of the district court ordered defendants to institute an action in revendication within 60 days. Moreover, in his brief to this court, counsel for defendants states:
 

 “The defendants in this case have declined to convert this into a petitory
 
 *268
 
 action and consequently [neither] the title to the land, the fee ownership nor the mineral rights is at issue. That leaves for decision by this Court only the question of whether or not plaintiff is actually in possession of the minerals, had been in possession for more than a year at the time this suit was filed, and whether the defendants have slandered his title. * * *
 

 "Plaintiff has filed a plea of prescription liberandi causa and claims that the rights of the defendants háve become extinguished by nonuse. We take the position that the Court cannot decide that question without thereby deciding finally who is the owner of the mineral rights and that question is not at issue. * * *” (Brackets ours.)
 

 On the subject of the jactitation action, such as we are here considering, the opinion in Siegel v. Helis, 186 La. 506, 172 So. 768, provides a lengthy and exhaustive discussion. Therein, it is shown that the action is a remedy of necessity created by our jurisprudence beginning in 1821, not by our- Codes; and being such the courts may regulate it so as to make it effective for the purpose for which it was created. The object of the action is to protect possession, not to establish title; and the relief sought therein is that defendant be ordered to bring suit to establish his pretentions, pay damages for the slander, and that the plaintiff be quieted in his possession. Unless the defendant in his answer chooses to tender the issue of title, an issue of that kind cannot be decided; the only possible issues determinable are the possession of plaintiff and the slander by the defendant.
 

 The jactitation action having been created long prior to the establishment of the oil and gas industry in this state, it seems obvious that the remedy was not originally intended for application in adjudging a disputed mineral interest. Again, such seeming inapplicability as an original proposition is suggested by the legal concept, recognized in our jurisprudence, that oil and gas in place are not subject to absolute ownership or possession (a requisite of the jactitation action) as specific things apart from the soil of which they form part, the landowner himself having no absolute property in these substances but only the right to draw them from the soil and thereby become the owner. Nevertheless, a resort to the jactitation action for ultimately determining ownership of a disputed mineral interest has received judicial sanction, impliedly if riot expressly, in numerous cases in our jurisprudence. True, in nearly all of these cases the defendants converted the suits into petitory actions. But it is true also that the commencement of the proceedings by jactitation action's was never disapproved.
 

 Among the jactitation actions so converted was the celebrated case of Frost-
 
 *270
 
 Johnson Lumber Company v. Sailing’s Heirs, 150 La. 756, 91 So. 207, 209, in which the concept of nonownership of minerals in place was finally established. In approving'the form of action the court laid down the rule that “A person in possession as owner of land has a right of action for slander of title against any one who- claims a right to minerals in or under the land, or who claims any real right upon the land.” Then the court observed:
 

 “* * * And it is well settled that, when the question of possession, in a jactitation suit, does not depend upon actual occupancy or physical possession, but depends upon a legal conclusion to be derived from a proper construction of the titles, the question of possession is relegated to the merits of the case, or passes out of it; for it would be a begging of the question, in such case, to attempt to decide the question of possession as a preliminary or an independent question. * * *”
 

 By the observation that the question of possession is relegated to the merits of the case when it does not depend upon actual occupancy or physical possession, the author of that opinion meant, obviously, that such question was relegated to the merits of the converted action in which the issue of title was involved, not the merits of the jactitation action. This is made clear in a comment by the same author regarding the Frost-Johnson Lumber Company case in International Paper Company v. Louisiana Central Lumber Company, 202 La. 621, 12 So.2d 659, 663. Therein he said:
 

 “* * * In the Frost-Johnson case the defendants in their answer claimed ownership of the mineral rights, in response to which claim the plaintiff pleaded the prescription of 10 years liberandi causa, treating the defendants’ answer as a conversion of the suit into a petitory action. By consent of all parties the plea of prescription was referred to the merits of the case and was dealt with as having put at issue the question of title to the mineral rights. * * *”
 

 In the International Paper Company case certain lessees of the principal defendant were operating, at the time of the filing of that jactitation suit, 63 producing wells on plaintiff’s land, they having been drilled in connection with a mineral servitude created more than ten years previously. In view of the drilling and production operations (defendant had refused to convert the suit into a petitory action) the court determined that the defendant was actually possessing the minerals through an exercise of its rights, this being the means for enjoying possession of incorporeal property such as servitudes, citing Civil Code Article 3432 and Allison v. Maroun, 193 La. 286, 190 So. 408. The jactitation action was dismissed, therefore, on the ground that the plaintiff landowner
 
 *272
 
 did not have adverse possession of the oil, gas and mineral rights. During the course of the opinion the court called attention to conflicting contentions of the litigants respecting a question of whether there had •been an interruption of the liberative prescription of ten years affecting the servitude; and it then said: “These conflicting contentions of the parties in this suit have reference to the title to the mineral rights, and are out of place in a jactitation suit.”
 

 Other pertinent observations made in the opinion of the International Paper Company jactitation suit, which the defendant declined to convert into a petitory action, are the following:
 

 “The only question in this case therefore is whether the. plaintiff, International Paper Company, was in actual possession as owner of the mineral rights in dispute, — and consequently whether the defendant, Louisiana Central Oil & Gas Company, was not in adverse possession of these rights' — -at the time when this suit was filed.
 

 * * * * * *
 

 “The plaintiff in this suit, having possession of the land under a deed which excluded the mineral rights which are involved in this suit, and which were in fact possessed adversely and exercised by the defendant under a recorded title, found it necessary to plead that the defendant’s clain^to the mineral rights had become extinguished by nonuse, by the prescription of ten years liberandi causa. We cannot decide in this case whether the plea of prescription is or is not well founded, without thereby deciding finally whether the plaintiff or the defendant has title to the mineral rights; and it is conceded on both sides that that question is not at issue in this jactitation suit.
 

 “The plaintiff depends upon the rule that one who has possession of the surface of a tract of land as owner may maintain a jactitation suit against one who slanders the possessor’s title by claiming mineral rights in the land. But that rule has its qualifications, one of which is that if the possessor of the land holds under a deed which on its face excepts the mineral rights, or if the so-called slander holds a recorded deed for the mineral rights, the possessor of the surface of the land' — in order to maintain his jactitation suit — must allege and make a prima facie showing that the outstanding claim of the slanderer for the mineral rights has been extinguished by the prescription of ten years liberandi causa. In such a case the possessor of the surface as owner of the land cannot maintain a jactitation suit against a defendant who has a recorded deed for the mineral rights if the defendant is actually dnd adversely possessing or exercising the mineral rights. * * *”
 

 
 *274
 
 In the instant jactitation action, just as was said in the International Paper Company case involving a similar suit, we cannot decide whether plaintiffs’ plea of prescription is or is not well founded. For us to do so would be to determine finally whether the plaintiffs or the defendants have title to the disputed mineral interest — an issue which is improper and out of place in a jactitation action. Therefore, no consideration whatever is now being given to the recorded notarial act of date June 18, 1945 pleaded by defendants in their answer, with full reservation of all rights under their exception of no right of action, as having effected an interruption of the ten years liberative prescription.
 

 Relevant for our consideration, if we are to follow the established jurisprudence which long has sanctioned á resort to the jactitation action in seeking a decision respecting a disputed mineral interest, are only those facts which pertain strictly to the question of plaintiffs’ possession. Admittedly, these plaintiffs are in the actual possession as owners of the surface rights of the land. This fact alone would be sufficient for their success in this action were it not for defendants’ claim to a mineral servitude created under a recorded instrument; for, according to our jurisprudence and particularly the rule announced in the Frost-Johnson Lumber Company case, a person in possession as owner of land is for the purpose of the jactitation action deemed also the owner and possessor of the minerals underlying the land. However, the mineral servitude so claimed by defendants, as admissions and stipulations in the record disclose, was created more than ten years prior to the institution of this action on May 11, 1949; and between such date and November 21, 1936 there was no exploration for or pror duction of oil, gas or other minerals on the land in controversy. This being true, the presumption is that the servitude was not in existence when this suit was filed. A mineral servitude, created by the sale or reservation of the mineral oil or gas in a tract of land, is lost by prescription liberandi causa if the owner of the right, being not the owner of the land itself, fails to exercise it for a period of ten years. See Palmer Corporation of Louisiana v. Moore, 171 La. 774, 132 So. 229, and numerous cases therein cited. From which it follows that plaintiffs, having made that presumptive or prima facie showing and being the owners and possessors of the land, are entitled to maintain this jactitation action; and, further, that the district judge acted correctly in ordering the defendants to bring suit within 60 days in revendication of their rights.
 

 'Of course, the defendants may rebut the mentioned presumption of the loss of their servitude by proving that the accruing prescription was interrupted or suspended during the ten year period. But the proof can be made only in the revendication action, if and when timely
 
 *276
 
 brought, inasmuch as defendants’ title depends entirely on an interruption or suspension of prescription (the servitude appearing on its face to have prescribed) and no issue of title can be tried in a jactitation action. .
 

 For the reasons assigned the judgment appealed from is affirmed at appellants’ costs.