In his closing argument, the District Attorney stated:

". . . if the State has proved that this defendant was found to be in possession of any of these items unexplainedly, then the law dictates to you that you ought to presume that he is the robber."

 Defendant complains that this argument is an indirect comment upon the failure of defendant to take the stand and a violation of Article 770 of the Louisiana Code of Criminal Procedure.

We have held many times that a reference to the possession-of-stolen-property presumption is not a comment upon the failure of the defendant to testify. See, e. g., State v. Odom, 247 La. 62, 169 So.2d 909 (1964); State v. White, 247 La. 19, 169 So.2d 894 (1964); State v. Shelby, 215 La. 637, 41 So.2d 458 (1949).

The bill of exceptions lacks merit.

We have examined the remaining bills of exceptions relied upon in this court. None of them raise a substantial question.

In our opinion, the defendant received a fair trial with full protection of all of his

constitutional rights. His conviction and sentence should therefore be affirmed.

For the reasons assigned, the conviction and sentence are affirmed.

DIXON, J., concurs.

260 So.2d 307

**REE CORPORATION**

**v.**

**Richard Conway SHAFFER et al.**

**No. 51437.**

March 27, 1972.

Ellender, Wright & Wurzlow, Frank W. Wurzlow, Jr., Houma, for plaintiff-applicant.

Duval, Arceneaux & Lewis, George Arceneaux, Jr., Watkins, Watkins & Walker, Kenneth Watkins, Houma, for defendants-respondents.

McCALEB, Chief Justice.

This is a possessory action instituted by the Ree Corporation. The petition was

filed February 14, 1964, and an amended petition was filed on March 10, 1966. Therein plaintiff alleges that it is the owner of an undivided one-half interest in a certain tract of land in Terrebonne Parish, which it acquired in an Act of Exchange from Ernest E. Rogers; that in November and December, 1959 the named defendants (who are the heirs of Thomas A. Shaffer),[1] pretending to be the owners executed mineral leases covering the entirety of the property in favor of Placid Oil Company; and that the execution and recordation of said leases constitute a legal disturbance of the real and actual possession of the property by plaintiff who, with its ancestors in title, have had the real and actual possession of the property without interruption for more than thirty years immediately prior to the said disturbance.

Following a hearing on the merits, the trial court rendered judgment recognizing plaintiff's right to possession of the property, and directed defendants to assert any adverse claim of ownership thereto in a petitory action within sixty days, or in default thereof be forever barred from setting up any title or ownership of the land in question.

On appeal the judgment was reversed, and plaintiff's possessory action was dismissed. La.App., 246 So.2d 313. We granted certiorari. 258 La. 970, 248 So.2d 831.

At the commencement of the trial, which began in April, 1968, defense counsel attempted to amend the answers so as to show that the defendants had never owned or claimed to own more than a one-third interest in the property. The trial court, observing that "I haven't been able to digest all these things sufficiently to be able to say what effect amendments would have", ruled that the amendments came too late.

The Court of Appeal held that the action denying permission to the defendant to amend was improper. It treated the case as if the amendment had been made and it held that:

"Since defendants' claim of ownership does not impinge upon the undivided half interest asserted by plaintiff, and the recordation of defendants' leases does not constitute a disturbance in law of plaintiff's right to possession as co-owner, plaintiff has no ground upon which it can maintain a possessory action in this instance. We expressly find that plaintiff's remedy is either for partition or petitory action wherein, in either event, the dispute as to title may be resolved."

---

1. The defendants are Richard Conway Shaffer, Mrs. Elise Shaffer Niemeyer, Mrs. Edith Shaffer Burrows, Mrs. Ora Nelms Shaffer, and Mrs. Lorraine K. Shaffer in her capacity as Natural Tutrix of the minors Barbara Ann Shaffer, Thomas Alexander Shaffer, III and Katherine Ann Shaffer.

We are inclined to agree with the holding of the Court of Appeal that the trial court should have permitted the amendment. However, we cannot subscribe to the stated basis for the appellate court's dismissal of plaintiff's possessory action that, since defendants claim an undivided one-third coownership of the property and plaintiff is only asserting ownership to an undivided one-half, defendants' recordation of their lease with Placid does not constitute a disturbance in law to plaintiff's right of possession. This is because the principal theory of plaintiff's case is that it is a coowner, and possesses in indivision the whole of the property with F. Wurzlow and Co., the latter being in corporeal possession as plaintiff's agent. Were this so, and if plaintiff were able to prove that Wurzlow was possessing for plaintiff under an agreement with it, then plaintiff would be entitled to judgment for, under such circumstances, defendants' recordation of its mineral lease to Placid would be a disturbance in law of plaintiff's alleged possession under Article 3659 C.C.P.[2]

Hence, the primary, indeed, the only question presented for decision is whether plaintiff has shown that it has had the type of possession required by our Code of Civil Procedure for more than a year prior to the disturbance in law which resulted from defendants' recordation of the mineral lease it granted Placid in 1959.

The articles of the code are explicit. Article 3656 declares in part: "A plaintiff in a possessory action *shall* be one *who possesses for himself."* Article 3658 states in part: "To maintain the possessory action the possessor *must allege and prove* that:" (1) He had possession of the immovable property or real right at the time the disturbance occurred; (2) He and his ancestors in title had such possession quietly and without interruption for more than a year immediately prior to the disturbance; (3) The disturbance was one in fact or in law as defined by Article 3659; and (4) That the action was instituted within a year of the disturbance. And Article 3660 asserts: "A person is in possession of immovable property or of a real right * * * when he has the *corporeal* possession thereof, or civil possession thereof *preceded by corporeal possession* by him or his ancestors in title * * *." It further recites: "Subject to the provisions of Articles 3656 and 3664, a person who claims the ownership of immovable property or of a real right possesses through his lessee, through another who occupies the property or enjoys the right *under an agreement with him* or his lessee * * *." (Emphasis added.)

2. This article provides that the "continuing existence of record of any instrument" asserting or implying a right of ownership of the property constitutes a disturbance in law.

With these principles in mind, we examine the facts.

The record reflects that on July 10, 1962 plaintiff corporation acquired its title from one Ernest E. Rogers who, at that time, transferred a one-half interest in the property to plaintiff in exchange for 298 shares of no par stock in the corporation. The agreement was entered into immediately after Rogers had been sent into possession of the property by a judgment in the succession of his mother, Mrs. Lena Barrett Rogers.

The defendants also exhibited their title, for the purpose of showing their possession. It emanates from a recorded deed executed on January 23, 1913 wherein Lineas J. Laperouze transferred the property in indivision to Charles E. Barrett (plaintiff's ancestor in title), Charles W. Harrell, and Thomas A. Shaffer (defendants' ancestor in title).

At the trial of the matter it was made apparent that plaintiff did not itself have, and had never had, real and actual corporeal possession of the property involved. Rather, it was relying on (1) the corporeal possession of F. Wurzlow & Co., as its agent; (2) an asserted civil possession through its ancestors in title; and (3) on a constructive possession said to inure to its benefit because of the corporeal possession of a co-owner, F. Wurzlow & Co. It is claimed by plaintiff that the latter had title to an undivided one-half interest in the property stemming from a deed executed in 1943 whereby Mrs. Mary F. Barrett, widow of C. E. Barrett, Sr., sold a one-half interest in the property to Herbert C. Wurzlow.[3]

3. Defendants, at the trial, objected to the introduction of plaintiff's title and that of the Wurzlow Co., arguing that plaintiff would thereby convert the action into a petitory one, and further, that a constructive possession by mere co-ownership would not support the possessory action. Under the view we take of the facts of the case, it is not essential for us to rest our decision on these contentions, even though they may well be tenable. With regard to the first contention, we think it difficult to comprehend a finding of constructive possession based on co-ownership between a plaintiff and a third party without first determining the validity of the titles in order to hold that they are co-owners. Besides, it may be that, when plaintiff exhibited its title to establish a constructive possession, it was using the title to do more than prove the nature of his possession (that is, whether he possessed for himself) and the extent thereof.

Also, we are not convinced that such a constructive possession (based merely on co-ownership) is sufficient to support a possessory action in view of the provisions of Article 3660 of the Code of Civil Procedure stating that the possession intended by the possessory action articles is "*corporeal* possession thereof, or civil possession [*which was*] *preceded by corporeal possession by him* [plaintiff in the possessory action] *or his ancestors in title.* * * *" (Emphasis added.) The article further provides for a constructive possession through a lessee or another who occupies the property "under an agreement with him." But we find no language therein which would warrant a holding that a legal possession, merely through a co-ownership, is sufficient to sustain the action.

In June, 1959, Mrs. Lena Barrett Rogers and her husband, J. E. Rogers, entered into a mineral lease with the Placid Oil Company.[4] Although the lease recites that the consideration therefor was One Hundred Dollars and other valuable consideration, the record reflects that the actual consideration was the payment of $28,470—$14,235 upon execution of the lease, and the balance on January 10, 1960, with the understanding that only a failure of the Rogers' title would relieve Placid from payment of the balance. Also, it was agreed that delay rentals would be paid at the rate of $18,980 per year.

In November and December of the same year Placid obtained leases from the Shaffer heirs. (These are the leases said to constitute a disturbance of plaintiff's possession.)

On January 8, 1960 the Rogers and Placid agreed in writing that, because of the cloud on the title (the claimed co-ownership of the Shaffers) the amount due on the bonus payment would be reduced and that the delay rental agreement would be cut to $6,326.67 annually, it being understood that if the Rogers' ownership to the entire one-half interest were established the delay rentals would be increased to the original figure. It was further agreed that the Rogers were accepting the reductions "to avoid litigation at this time", although they did not recognize the ownership of the adverse claimants. The testimony of Ernest Rogers clearly shows that when the agreement was confected he and his parents had knowledge of the Shaffer claims and their leases to Placid, and that these were the cause of the amendment to the original Rogers-Placid lease.

Thereafter, on July 3, 1960, a well was spudded in on the property and completed as a producer on October 1, 1960. It was plugged and abandoned on March 1, 1961. At least one other producing well was drilled in the area by Placid on other property which was unitized with the tract in question. But no more than a one-sixth portion of any of the royalties attributable to the tract has ever been tendered to the Rogers by Placid, because of the outstanding claim of the Shaffer heirs.[5] It would appear that the elder Rogers accepted this payment. Nothing in the record shows that they did not. However, following his

---

However, as heretofore stated, we need not pass on these issues at this time because of our conclusions on other phases of the case. We set down these observations so that our opinion, without otherwise mentioning them, would not be construed as deciding these questions.

4. The lease purported to cover the entire tract, but other documents in the record

establish that it was understood by all parties that it applied only to Mrs. Rogers' claimed one-half interest.

5. As between the present claimants, a one-sixth portion is all to which plaintiff would be entitled if the claims of defendants and Wurzlow Company are valid.

mother's death, when Ernest Rogers was sent into possession of her estate, he refused to accept such payments and returned several of them to Placid. The company apparently then stopped payment entirely, because on the trial Rogers testified that the Ree Corporation was receiving no royalty payments at all.

In order to support its asserted civil possession, through its ancestors in title, plaintiff exhibited certain mineral leases executed by Mrs. Mary F. Barrett and Mrs. Lena Barrett Rogers to the Union Oil Company and to the Humble Oil and Refining Company, the Rogers' lease to Placid in 1959, the assessment rolls showing the assessment for the years 1962–1964 of an undivided one-half interest in the property in the name of Mrs. Lena Barrett Rogers and, later, the Ree Corporation, and the payment of taxes by the Ree Corporation for some of those years. Also shown were trapping leases by Mrs. Barrett to Frank Wurzlow, the last one

being dated May 29, 1945,[6] a pipe line right of way across the property granted by Mrs. Rogers, and certain camp-site leases executed in 1950 which declare that the lessee is the tenant at will "of F. WURZLOW & CO. ET AL."

But the execution of these legal documents alone are not sufficient to establish the requisite civil possession under C.C.P. Art. 3660, unless there is shown to have been some corporeal possession by either the asserted owners or the holders of the rights granted by these documents. The record is barren of any evidence that any of these persons ever went into physical or corporeal possession of any of the land in dispute.[7] Whether Mrs. Barrett or Mrs. Rogers paid the taxes is not shown. In any event, the mere payment of taxes does not constitute the physical possession required by Article 3660 to bring the possessory action.

We conclude, therefore, that plaintiff has failed to establish civil possession

6. Also in the record is a trapping lease dated June 12, 1945 from Wurzlow to Gustave J. Laperyouse. Plaintiff denominates this lease as "assignment" of his lease from Mrs. Barrett. However, inspection of the lease shows that it is merely a lease of his "undivided interest" in the property (which he had acquired in 1943). Nothing in it indicates that it was an assignment of the lease rights of Mrs. Barrett's undivided interest.

7. Of course, *Placid* drilled the producing well on the property in 1960, which we have heretofore mentioned. But Placid

was the lessee of the defendants as well as the Rogers and, consequently, any acts of possession by Placid would inure to the benefit of both lessors. Besides, we think that the action of Placid in refusing to pay royalties and delay rentals to the Rogers (and later to Ree) in accordance with the terms of their initial lease constituted, if anything, a disturbance in fact of whatever possession they may have had. However, we express no opinion as to the effect of this factual disturbance on the timeliness of this suit. But see subparagraph (4) of Art. 3658 C.C.P.

through the initial corporeal possession of its ancestors in title.

Moreover, we do not find in the record any evidence of title in either Mrs Barrett or Mrs. Rogers. Consequently, even if some sort of possession in them had been shown, it would be impossible to say whether they possessed as owner, or to determine the extent of their possession.

 Nor do we think that the record shows that the Wurzlow Company through Herbert Wurzlow and his brother, Kermit Wurzlow, exercised the required possession as agent for plaintiff or Mrs. Rogers. It is true they testified that when they executed certain camp-site leases (from 1959–1963) and the lessees went into possession, it was their intention to act for themselves and for the "Barrett interest." But the facts do not bear out this assertion, and certainly no overt, affirmative acts indicated such intent. To the contrary, the camp-site agreements declare that *the Wurzlows are the owners of the property*. Two of the lessees testified for plaintiff. They said that when Kermit Wurzlow showed them the property he told them he was handling it for the Wurzlow family.

Chester Lapeyrouse testified that his father had trapped the property and that he himself had trapped it after that. But his testimony is that they had dealings only with the Wurzlows, and he referred to the property as "the Wurzlow's tract of land."

Only one receipt for money paid by Lapeyrouse for trapping privileges was exhibited by plaintiff. It is dated February 6, 1964 —a few days before the instant suit was filed—and is signed by Herbert Wurzlow as agent. He testified, over the objection of defendants, that he considered himself acting as agent for the Barrett family. The Barrett family, as such, no longer owned the property then. The receipt indicates that it was for trapping privileges in 1963–64. Wurzlow testified that permission to trap was granted in 1964.

Despite the alleged intentions of the Wurzlows, they admitted at the trial that no accounting was ever made to the Barretts, the Rogers or plaintiff for the money received from the trapping or camp-site leases. Additionally, although Herbert Wurzlow said that he had some sort of understanding with Mrs. Barrett and Mrs. Rogers, he conceded that he had no agreement with the plaintiff, as is required by Article 3660 in order that one might claim the possession through another who occupies the property for him.

We conclude, therefore, that the record does not establish that the Wurzlows were possessing as agent for plaintiff or its ancestors in title in the manner required by Article 3660.

 Lastly, we advert to the contention of plaintiff that the possession of its co-owner, the Wurzlow Company, resulted in

a constructive, legal possession in it. That is, that the Wurzlow possession inured to plaintiff's benefit and forms the basis for its possessory action.

We find the doctrine of such a constructive possession inapplicable here and unavailable to plaintiff under the circumstances of this case (even assuming, arguendo, that such a possession may support the possessory action). This, for the reason that defendants are also record co-owners with the Wurzlow Company, and the possession of the latter would inure to their benefit as well as to that of plaintiff, the result being that both plaintiffs and defendants would be in legal, constructive possession of the property.

Inasmuch as plaintiff has failed to establish its possession of the property for one year prior to the alleged disturbance, its possessory action cannot be maintained.

For the reasons assigned the judgment of the Court of Appeal is affirmed.

BARHAM and DIXON, JJ., concur.

TATE, J., concurs and assigns reasons.

TATE, Justice (concurring).

I concur, somewhat hesitantly, in the majority's conclusion that the possessory action is not available to the plaintiff because it has not proved the requisite one-year's undisturbed possession, either in 1959 when Placid's lease was recorded, or in 1964, when this suit was filed. Reasonable minds may differ as to whether the plaintiff was actually in such possession, and I am not prepared now to state that the majority errs as a matter of fact.

The principal motivation for this concurring opinion is to express doubt as to the correctness of the majority's statement that the plaintiff was required to prove a year's undisturbed possession prior to the *recordation* of Placid's lease in 1959. This disturbance in law amounts to a continuing disturbance, see La.C.Civ.P. Art. 3659. For purposes of determining the year within which to bring a possessory action, La.C. Civ.P. Art. 3658(4), therefore, this continuing disturbance is regarded as occurring not only on the date of recordation but each day thereafter. The majority implicitly so held by not dismissing this action because not brought within a year of 1959. See also Dixon v. American Liberty Oil Co., 226 La. 911, 77 So.2d 533 (1954).

However, although the recordation itself is a disturbance in law for *such* purpose, the prior jurisprudence never held such "disturbance in law" by mere recordation to be a sufficient interruption of possession to prevent the physical possessor of property from being nevertheless considered to be in "possession quietly and without interruption", La.C.Civ.P. Art. 3658(2). See below. The determination of whether the plain-

tiff is in possession, or whether his possession is uninterrupted, is a matter of substantive law regulated by Articles 3426–3456 of the Louisiana Civil Code; and a possession is interrupted only in the case of physical usurpation, Civil Code Article 3449, not by a "disturbance in law".

As the prior jurisprudence held, a disturbance in law, therefore, does not prevent the plaintiff from having the requisite undisturbed possession in order for him to bring suit as a possessor for more than one year, as required by now La.C.Civ.P., Art. 3658 (2). The prior jurisprudence and the proper construction of the present code articles to such effect (so as to be in accord with this prior jurisprudence) are excellently analyzed in Chauvin v. Kirchhoff, 194 So.2d 805, 811–815 (La.App. 1st Cir. 1967).

In summary, I do not believe the new Code provisions intended to make a disturbance in law through the continuing "existence of record", La.C.Civ.P. Art. 3659, such an interruption of corporeal possession, or of civil possession preceded by corporeal possession, La.C.Civ.P. Art. 3660, as to prevent the possessor from being in "possession quietly and without interruption", La.C.Civ.P. Art. 3658(2). See Civil Code Article 3449, limiting loss of possession to physical usurpations thereof. To so construe the new Code of Civil Procedure provisions might easily deprive a possessor in real and actual possession of property for decades of his remedy of a possessory action, simply because unknown to him there existed a recorded instrument which was a "disturbance in law". The Official Revision Comment specifically noted that no change in prior law was intended, and the 1960 procedural reform of consolidating the former jactitory action with the broadened possessory action was not intended thereby to prevent the actual possessors of property from resorting to a possessory action to protect their possession.

Since the difference in dates (1964, versus 1959) is not material to the majority's rationale, I do not believe the majority intended to rule upon this issue. I therefore respectfully concur, with the reservations noted.